OPINION OF THE COURT
Richard E. Sise, J.
*391 On April 13, 1995 the claimant, Lee Long, was convicted of first degree rape and robbery and two counts of sexual abuse in the first degree. He was sentenced to two terms of 8 to 24 years. On April 28, 1997 Mr. Long’s judgment of conviction was unanimously affirmed by the Appellate Division. On July 23, 1997, his application for leave to appeal to the New York State Court of Appeals was denied.
On March 9, 2000, after a postconviction investigation, the Legal Aid Society filed a notice of motion seeking to set aside the conviction. On June 23, 2000 Justice Joseph G. Golia issued an order vacating the judgment of conviction and dismissing the indictment (exhibit C annexed to notice of cross motion). Thereafter, a memorandum dated June 26, 2000 was issued by Justice Golia (exhibit D annexed to notice of cross motion). Finally, on May 28, 2002 Justice Golia issued another decision and order which sought to reach issues upon which he had “reserved” two years earlier (exhibit E annexed to notice of cross motion).[1] A claim was filed on behalf of the claimant on June 26, 2002 (exhibit A annexed to notice of cross motion).
The first issue, fully developed by the parties herein, concerns the timeliness of the claim. The defendant contends that the claim is untimely having been filed over two years after Justice Golia’s order vacating the judgment of conviction and dismissing the indictment. Claimant argues the time should be computed from May 28, 2002, when Justice Golia issued his second decision and order.
Section 8-b of the Court of Claims Act provides in pertinent part: “[a]ny person claiming compensation under this section based on . . . the dismissal of an accusatory instrument that occurred on or after the effective date of this section shall file his claim within two years after the . . . dismissal.” (Court of Claims Act § 8-b [7].)
In order to discern when the statute of limitations commences for the purpose of Court of Claims Act § 8-b, the court must interpret prior case law regarding the Court of Claims Act in general, as well as the legislative history of the specific section in question.
This court has consistently held that the State’s limited waiver of sovereign immunity gives rise to a strict interpretation of the filing requirements (see Alston v State of New York, *392 97 NY2d 159 [2001]). The adoption of Court of Claims Act § 8-b in no way altered the aforementioned.
The legislative history of section 8-b also indicates that the claim be brought within two years after the accusatory instrument was dismissed (Report of Law Revision Commn, 1984 McKinney’s Session Laws of NY, at 2933-2934).
The attorney for the claimant contends that section 8-b requires only that the vacatur be on the grounds enumerated in section 8-b (3) (b) (ii) and not the dismissal. Therefore, counsel argues the statute does not begin to run until the vacatur’s grounds are stated — which in the present case was on May 28, 2002, when Justice Golia issued his amendment to the initial order (Scheck reply at 8-18). The attorney for the State argues that the time to file begins to run when the order dismissing the accusatory instrument was signed — here June 23, 2000 (Stroth reply at 2-10).
The court has reviewed the litany of cases cited by the parties. After having done so, the court finds that the statute of limitations began to run on June 23, 2000, when Justice Golia issued an order dismissing the accusatory instrument. Not only does the language of section 8-b provide that the purported claimant “shall file his claim within two years after . . . [the] dismissal” (§ 8-b [7]), but also the legislative history contains the same language (Report of Law Revision Commn, 1984 McKinney’s Session Laws of NY, at 2934).
This interpretation is supported by the Appellate Division’s decision in the case of Stewart v State of New York (133 AD2d 112 [1987], lv denied 72 NY2d 807 [1988]). In that case the claimant brought an action pursuant to section 8-b, but failed to submit documentary evidence that “the accusatory instrument was dismissed on any one of the limited grounds enumerated under Court of Claims Act § 8-b (3) (b)” (Stewart v State of New York, supra at 113).[2] The Court, therefore, affirmed a dismissal of the claim. The decision clearly indicates that a dismissal of the accusatory instrument must be upon the enumerated grounds in order for the Court to entertain the claim.
Claimant’s attorney’s argument that the claim did not arise until after Justice Golia’s supplemental decision (mem of law in support of motion to dismiss affirmative defenses at 14 et seq.) is not convincing. If one were to accept counsel’s logic, actions *393 could be commenced at any time — even long after the two-year period — as long as a supplemental, amended or revised order incorporated the enumerated grounds. Clearly this was not the intent of the Legislature in passing the instant section. Had it wished to start the limitation clock running from the use of the formulaic words, it could have stated that the statute of limitations shall expire two years from the “accrual of such claim” (see e.g. Court of Claims Act § 10 [3], [3-a], [4]).
The fact that there may be instances where an individual will not recover because the dismissal of the accusatory instrument and the vacatur of the judgment of conviction did not contain the enumerated grounds was considered by the Legislature in creating the balance. However, the Legislature believed that a specific time needed to be set in order to protect the State from stale claims. In the present case, it was only because of the extraordinary actions of Justice Golia in issuing an “amended” order that the claimant had any right to bring this action. Despite his statement that he reserved on the issue of vacatur based upon “newly discovered evidence,” it is clear that his original memorandum never reserved on the issue and also that a fair reading of that decision indicated that the Justice considered the ground of newly discovered evidence a “nettlesome legal problem that could effectively prevent this Court from granting the motion presently before it.” (Exhibit 5 annexed to claim at 7 [paginated].) Accordingly, in his memorandum Justice Cofia relied upon other grounds to support his dismissal of the indictment, namely, the interests of justice.
Turning now to the issue of verification.
On June 26, 2002, the instant claim was filed. It was not verified by the claimant, who resided outside the state, but rather by his attorney, Mr. Scheck.
Section 8-b (4) provides in pertinent part: “[t]he claim shall be verified by the claimant.” The Legislature in enacting this portion of section 8-b again sought a balance between one unjustly convicted and the burden of frivolous claims; therefore, it required two things of such claims: (i) documentary evidence of a conviction and innocence; and (ii) that the claim be in sufficient detail “which must be personally verified” to enable the court to determine that the claimant is likely to succeed at trial (Report of Law Revision Commn, 1984 McKinney’s Session Laws of NY, at 2928-2929). The Commission noted that the linchpin of its proposal was based upon the innocence of the claimant.
The State argues that the failure of the claimant to personally verify his claim is fatal. The attorney for the claimant states *394 that the language of the section must be interpreted with reference to the CPLR which permits an attorney to verify a pleading where the party is not within the jurisdiction. He also argues that even if the verification were improper, the court should permit the claimant time to correct the imperfection (Scheck reply at 18-20).
A review of the Court of Claims decisions on the issue of verification leads the court to find that defective verification has been found to be a jurisdictional defect (see Martin v State of New York, 185 Misc 2d 799 [2000]; Grande v State of New York, 160 Misc 2d 383 [1994]).
The attorney for the claimant, in his second argument, alludes to two unreported Court of Claims cases to support the proposition that the court should grant the claimant an opportunity to correct the defect.[3] In the first case, Vasquez v State of New York (Scheck reply at 18 [exhibit F annexed to notice of cross motion, Claim No. 83301, filed June 30, 1995]), Judge Blinder held that a claim brought pursuant to section 8-b was a unique statutory cause of action, and that the verification requirement was an integral part of the remedy and that, accordingly, the general provisions of the CPLR must give way to the Court of Claims Act (Vasquez v State of New York, supra, slip op at 2-3). Nevertheless, he granted the claimant 30 days to correct the defect.
In the second case, Pejcinovic v State of New York (Scheck reply [exhibit F annexed to notice of cross motion, Claim No. 89358, filed Aug. 8, 1997]),[4] the court ruled that an attorney’s verification for an out-of-state claimant was improper and that no opportunity to correct the defect would be granted because the claimant, unlike the claimant in the Vasquez case, had been specifically made aware of the defect.
Claimant’s attorney seeks to obtain the relief granted by Judge Blinder in Vasquez, and distinguish Judge Mega’s decision in Pejcinovic. He argues that the court in Pejcinovic denied the relief requested by the movant, because no corrective action had been taken for over a period of nine months, whereas here, *395 the corrective action was taken “immediately” (Scheck reply at 18-19).
In reviewing these unreported cases, the court agrees with the reasoning of Judges Blinder and Mega, that the claim must be personally verified and that an attorney’s verification for an out-of-county claimant is fatally defective. That being said, the only issue remaining is whether the defect can be corrected under the circumstances of this case — the court thinks not. The court has found the statute of limitations had run before the claim was filed; therefore, a corrected verification could not replace the defective one. Accordingly, the “immediate” corrective action,[5] which did not take place until more than three months after the answer had been received by the claimant’s attorney, was too late (exhibit 5, letter of Nov. 20, 2002, annexed to notice of motion to dismiss affirmative defenses). As Judge Mega noted in his original decision in Pejcinovic v State of New York (exhibit F annexed to notice of cross motion): “[w]ith the passage of the statutory period, claimants’ cause of action was irretrievably lost, beyond the power of the Court of Claims to restore” (Pejcinovic v State of New York, supra, slip op at 4). Here the delay in filing the claim resulted in the same loss.
The court will not address the question of whether the claimant’s attorneys were misled by the Office of the Clerk of the Court of Claims, other than to note that the claimant’s attorneys are far too experienced to rely on a telephonic opinion of some unnamed person in the Clerk’s office (exhibit 5 annexed to notice of motion to dismiss affirmative defense, letter of Nov. 20, 2002) — not “the Clerk of the Court of Claims” (Scheck reply at 20 [emphasis added]).
Accordingly, the court denies the motion to dismiss the affirmative defenses and grants the cross motion to dismiss the claim on the grounds stated in this opinion.

. No statement of “reservation” is mentioned in either the order or memorandum issued by Justice Golia in June of 2000.

. It should be noted that the claim suffered from other fatal defects as well.

. By letter, the attorney for the claimant referred to the case of Thomas v State of New York (Claim No. 74207). The court finds this early section 8-b case’s reasoning subject to question and distinguishable.

. The above decision was issued on a motion to reargue. In the original decision, the court dismissed the argument that an attorney could verify the claim for an out-of-county claimant, and also denied a cross motion for an opportunity to correct the defective verification.

. This was taken at the same time the motion to dismiss the affirmative defenses was being prepared.